# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| TASHA ANN BONDURANT, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   **Case No:** 7:19cv461 |
| v. | ) |
| | ) |
| NORFOLK SOUTHERN CORPORATION, | ) |
| | ) |
| Serve: | ) |
| Roger A. Peterson, Registered Agent | ) |
| Three Commercial Place | ) |
| Norfolk, Virginia 23510 | ) |
| | ) |
|     Defendant. | ) |

## COMPLAINT

The above-named Plaintiff, Tasha Ann Bondurant (hereinafter, "Ms. Bondurant" or "Plaintiff"), by counsel, states as her Complaint against Defendant Norfolk Southern Corporation (hereinafter, "Norfolk Southern" or "Defendant"), the following:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by the Family and Medical Leave Act, as codified under Title 29 U.S.C. §§ 2601 *et seq.* ("FMLA").

2. Due to its location within the Commonwealth of Virginia, Norfolk Southern avails itself of the jurisdiction of this Court.

3. Venue is appropriate as the acts and/or omissions of Norfolk Southern from

1

which the causes of action arise occurred within the Western District of Virginia, Roanoke Division. *See* 28 U.S.C. § 1391(b)(2).

## II. THE PARTIES

4. Plaintiff Ms. Bondurant is a resident of Roanoke, Virginia.

5. Defendant Norfolk Southern is a Class I railroad company headquartered in Norfolk, Virginia, that operates approximately 21,500 route miles, both domestically and internationally, and maintains several North American locations, including a location in Roanoke, Virginia.

## III. FACTUAL BACKGROUND

6. Ms. Bondurant was hired by Norfolk Southern on or around July 9, 2014 as a Shipper/Receiver Clerk at Norfolk Sothern's Shaffer's Crossing Locomotive Shop in Roanoke, Virginia.

7. Prior to her unlawful termination from employment on or around November 10, 2017, Ms. Bondurant worked on a consistent, full-time basis for Norfolk Southern for more than three years, and her work performance was always excellent, and met or exceeded Norfolk Southern's legitimate expectations.

8. Indeed, Ms. Bondurant was awarded a third shift Shipper/Receiver clerical position in or about June of 2017, with work hours from 11 p.m. until 7 a.m., with Friday and Saturday rest days.

9. Ms. Bondurant suffers from a serious health condition, to-wit, severe allergies that cause aggressive sinus pressure and related ear, nose, and throat issues and allergy

2

induced asthma.

10. Ms. Bondurant's health condition requires continuing treatment by a health care provider, and necessitates her absence from work for medical appointments, allergy shots, and related treatment and recovery from frequent "flare ups" of her symptoms.

11. Accordingly, Ms. Bondurant's' heath condition qualifies as a "serious health condition" within the meaning of the FMLA. *See* 29 U.S.C. § 2611(11).

12. At all times relevant, Norfolk Southern had notice of Ms. Bondurant's serious health condition and, in or about 2017, Ms. Bondurant requested, and was approved for, intermittent FMLA leave to manage and treat her health condition.

13. Ms. Bondurant's FMLA certification specially allowed for eight monthly physician appointments and up to six monthly "flare ups" of her condition.

14. However, although Norfolk Southern had a duty to advise Ms. Bondurant of her rights and obligations under the FMLA, Norfolk Southern failed to accurately inform Ms. Bondurant of her FMLA rights with regard to retroactivity and concurrently running sick leave, or otherwise provide her with proper and correct notice of the rights and protections available to her under the FMLA, thus preemptively denying Ms. Bondurant's opportunity to exercise her substantive FMLA rights, and make educated decisions about her leave. *See* 29 C.F.R. § 825.300(b)-(c); 29 C.F.R. § 825.301.

15. Upon information and belief, Ms. Bondurant's supervisors, including, but not limited to, General Foreman Dan Lythgoe, held a discriminatory animus against

accommodating Ms. Bondurant's serious health condition, and were resistant to her use of FMLA leave to treat and manage her serious health condition.

16. As a result, Ms. Bondurant's Norfolk Southern supervisors targeted Ms. Bondurant, discriminated and retaliated against her, and treated her unfavorably for exercising the substantive FMLA rights to which she was entitled, thus interfering with Ms. Bondurant's use of FMLA leave, and ultimately resulting in her unlawful termination from employment.

17. Specifically, between August of 2017 and September of 2017, Ms. Bondurant's serious medical condition necessitated several days of FMLA leave to manage and treat her serious medical condition.

18. During this time, Mr. Lythgoe demanded that Ms. Bondurant adhere to a specific internal FMLA reporting protocol that was not, upon information and belief, required of other Norfolk Southern employees, and Ms. Bondurant inadvertently documented FMLA leave taken on August 20, 2017, August 31, 2017, September 5, 2017, and September 21, 2017 (hereinafter, for ease of reference, "August/September 2017 FMLA Leave") as corresponding to physician appointments, when the leave was taken instead for her allergy flare ups.

19. Ms. Bondurant's "mark off" error was unintentional, and simply the result of a paperwork mistake attributed to her inability to independently verify the specific purpose for these absences at the time the information was requested of her by her employer.

4

20. Of note, Ms. Bondurant is a single mother of a child with FMLA-qualifying medical issues, and at the time, was handling full time parenting responsibilities and full-time night-shift employment responsibilities, in additional to her own health issues.

21. Moreover, Norfolk Southern did not allow Ms. Bondurant to review her calendar or any other notes. Ms. Bondurant was forced to provide information related to past medical usage with an expectation of immediacy.

22. Importantly, Ms. Bondurant's unintentional error should have been without consequence, as both physician appointments and allergy flare ups were equally protected under Ms. Bondurant's FMLA intermittent leave certification, and consistent with her rights under the FMLA.

23. In or about October of 2017, and prior to receiving a letter requesting physician clarification for her August/September 2017 FMLA Leave, Ms. Bondurant realized her mistake, took action to correct the error and revise the August/September 2017 FMLA Leave "mark offs" as flare ups, and fully explained the inadvertent paperwork mistake in an email to Mr. Lythgoe.

24. However, on or about October 25, 2017, Norfolk Southern initiated an unnecessary formal investigation, with a hearing held on November 2, 2017, concerning Ms. Bondurant's August/September 2017 FMLA Leave.

25. During its investigation, Norfolk Southern provided no direct evidence that Ms. Bondurant had intentionally misled her employer, was purposefully deceitful, or had

abused her FMLA leave.

26. However, on or about November 10, 2017, Norfolk Southern informed Ms. Bondurant that she was "guilty as charged" of "conduct unbecoming an employee by making false and/or conflicting statements," and terminated her employment, effective immediately.[1]

27. Ms. Bondurant mistakenly classifying certain FMLA leave under one protected leave status, when the leave was taken for a reason also protected under her FMLA leave certification, did not, under even the most restrictive circumstances, justify Norfolk Southern's termination of her employment.

28. Indeed, Norfolk Southern could, and should, have simply retroactively certified Ms. Bondurant's misclassified August/September 2017 FMLA Leave, as both reasons provided by Ms. Bondurant for her absences from work were qualifying events. *See* 29 C.F.R. § 825.301 ("In all cases where leave would qualify for FMLA protections, an employer and an employee can mutually agree to that leave be retroactively designated as FMLA leave.").

29. Instead, Ms. Bondurant was terminated simply for providing an alternative, yet valid, reason for taking the FMLA leave to which she was entitled.

30. Upon information and belief, no business-related legitimate reason justified the

---

[1] During this time period, Norfolk Southern also initiated an investigation concerning Ms. Bondurant's use of sick leave for several work days occurring between July and September of 2017. On November 8, 2017, Norfolk Southern informed Ms. Bondurant that she was "guilty as charged" of being "excessively absent from work" for taking such leave, and assessed a 20 day deferred suspension of her employment.

actions Norfolk Southern took against Ms. Bondurant, and the decision to terminate her employment was directly related to Norfolk Southern's concerted effort to discriminate and retaliate against Ms. Bondurant for engaging in the protected activity of requesting and taking FMLA leave.

31. Accordingly, upon information and belief, Ms. Bondurant's termination was merely a pretext to unlawful discrimination and retaliation by Norfolk Southern, as her termination occurred within short temporal proximity to her use of FMLA leave, and under circumstances that raise a reasonable inference of unlawful discrimination, retaliation, and interference.

32. Upon information and belief, Norfolk Southern would not have terminated Ms. Bondurant, nor taken the other discriminatory and retaliatory actions against her, but for her requests for, and use of, FMLA leave to manage and treat her serious health condition.

33. Because the actions taken by Ms. Bondurant's Norfolk Southern supervisors were taken within the scope of their employment, Norfolk Southern is responsible for their actions based upon the doctrine of *respondeat superior*.

**COUNT I: DISCRIMINATION AND
RETALIATION IN VIOLATION OF THE FMLA**

33. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

34. At all times relevant, Defendant was: (1) engaged in commerce and/or in an industry affecting commerce; and (2) an employer of fifty (50) or more employees for

each working day during each of twenty (20) calendar workweeks in the current or preceding calendar year.

35. Plaintiff worked for Defendant for more than 1,250 hours during the twelve (12) month period immediately preceding her termination.

36. Plaintiff properly notified Defendant of her serious health condition and her need for FMLA-qualifying leave, to which she was entitled, to manage and treat her serious health condition.

37. Defendant discriminated against Plaintiff by failing to properly and accurately advise Plaintiff of her federally protected rights under the FMLA, improperly denying Plaintiff federally protected FMLA rights, retaliating against her for exercising the substantive FMLA rights to which she was entitled, and treating her differently, and less favorably, than similarly situated employees not exercising FMLA rights, resulting in Plaintiff's unlawful termination from employment.

38. Defendant would not have terminated Plaintiff, or taken other discriminatory and retaliatory actions against her, but for Plaintiff's requests related to, and use of, FMLA leave.

39. Any reasons given by Defendant for its treatment of Plaintiff were pretextual, as Plaintiff's work performance was excellent.

40. Defendant's discriminatory and retaliatory conduct prejudiced Plaintiff in that she lost compensation and benefits, sustained other monetary losses, and suffered the loss of her employment as a direct result of Defendant's violation.

41. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

42. At all times material hereto, Defendant engaged in unlawful or discriminatory practices with bad faith, malice, or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated damages.

43. The above-described acts by Defendant and employees of Defendant constitute unlawful discrimination and/or retaliation in violation of the Family Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601, *et seq*. ("FMLA").

**COUNT II: CLAIM FOR INTERFERENCE WITH FMLA RIGHTS**

44. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

45. At all times relevant, Defendant was: (1) engaged in commerce and/or in an industry affecting commerce; and (2) an employer of fifty (50) or more employees for each working day during each of twenty (20) calendar workweeks in the current or preceding calendar year.

46. Plaintiff worked for Defendant for more than 1,250 hours during the twelve (12) month period immediately preceding her termination.

47. Plaintiff properly notified Defendant of her serious health condition and her need for FMLA-qualifying leave, to which she was entitled, to manage and treat her serious health condition.

9

Case 7:19-cv-00461-MFU   Document 1   Filed 06/21/19   Page 9 of 11   Pageid#: 9

48. Defendant interfered with Plaintiff's use of FMLA leave by failing to properly and accurately advise Plaintiff of her federally protected rights under the FMLA, treating her differently and less favorably than similarly situated employees not exercising FMLA rights, discriminating and retaliating against her for attempting to exercise the substantive FMLA rights to which she was entitled, and terminating Plaintiff's employment in direct retaliation for Plaintiff's use of FMLA leave, thus impeding Plaintiff's exercise of her rights under the FMLA.

49. Defendant's interference prejudiced Plaintiff in that she lost compensation and benefits, sustained other monetary losses, and suffered the loss of her employment as a direct result of Defendant's violation.

50. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

51. At all times material hereto, Defendant engaged in unlawful or discriminatory practices with bad faith, malice, or reckless indifference to the federally protected rights of Plaintiff so as to support an award of liquidated damages.

52. The above-described acts by Defendant and employees of Defendant constitute unlawful interference with Plaintiff's rights in violation of the Family Medical Leave Act, as codified under Title 29 of the United States Code §§ 2601, *et seq*. ("FMLA").

WHEREFORE, Plaintiff Tasha Ann Bondurant prays for judgment against Defendant Norfolk Southern Corporation, and for equitable relief, compensatory, and/or liquidated damages, together with prejudgment interest from the date of

termination of Ms. Bondurant's employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

**TASHA ANN BONDURANT**

_____
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
Brittany M. Haddox, Esq. (VSB # 86416)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA  24011
Tel:  540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com
brittany@strelkalaw.com

*Counsel for Plaintiff*

11